STATE of Oklahoma ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Joe R. FARRANT, Respondent.

SCBD No. 3929.
OBAD No. 1112.

Supreme Court of Oklahoma.

Feb. 1, 1994.

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Joe R. Farrant, pro se.

KAUGER, Justice:

The complainant, Oklahoma Bar Association (Bar Association), alleges two counts of misconduct by the respondent Joe R. Farrant (Farrant/attorney). The first count relates to conversion of client funds entrusted to Farrant for a specific purpose.[1] The second count involves misrepresentations made to the Bar Association in relation to the facts

---

1. Rule 1.15, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A provides in pertinent part:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property...."

Rule 1.4, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:

"... (b) Where money or other property has been entrusted to any attorney for a specific

and circumstances surrounding the grievance.[2] We find that the Bar Association established by clear and convincing evidence[3] that: a) Farrant converted client funds entrusted to him for a specific purpose; and b) that he knowingly misrepresented the facts surrounding the complaint to the Bar

Association. This conduct warrants a one-year suspension followed by a probationary period of one year accompanied by weekly attendance at AA meetings and monthly sessions with a professional counselor. Costs of $1,138.09 are also imposed.[4]

purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or setoff for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.
(c) Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment...."

2. Rule 8.1(a), Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A provides in pertinent part:

"An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact ..."
Rule 8.4(c), Rules of Professional Conduct, 5 O.S.1991, App. 3–A provides in pertinent part:
"It is professional misconduct for a lawyer to:
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation ..."
Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides:
"After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts

or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action."

3. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:

"... (c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings."
State ex rel. Oklahoma Bar Ass'n v. Gasaway, 810 P.2d 826, 830 (Okla.1991); State ex rel. Oklahoma Bar Ass'n v. Braswell, 663 P.2d 1228, 1232 (Okla.1983).

4. Rule 6.13, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:

"Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat...."
Rule 6.16, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides:
"The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court."

## FACTS

### A. Agreed Facts

The parties stipulated to a portion of the trial panel's factual findings. They agree that in 1992, Jamee Clapper (Clapper/client) hired Farrant to represent her daughter and son-in-law in a child custody dispute. Farrant hired a private investigator, Bob Reed (Reed/investigator), of B & B Investigation to observe the son-in-law's former wife. Reed charged $5,777.93 for his work. On June 22, 1992, Farrant billed the client for $7,837.50 in attorney fees and $6,162.23 in expenses. The expense amount included the total for the investigation fees and charges for a deposition transcript and court costs. On the same date, the client gave Farrant **a check for the exact amount of the expenses—$6,162.23.** On June 26, 1992, Farrant wrote the client **acknowledging receipt of the check for expenses** and requesting that she make some payment towards his fee.[5] Farrant deposited the $6,162.23 in his operating account. In December of 1992, Farrant told the investigator that he had appropriated his client's check for himself.

### B. Additional Facts Found by Trial Panel

In addition to the stipulated facts, the trial panel found that the client believed she had an agreement with Farrant for the payment of attorney fees. She asserted that Farrant was to be paid at the conclusion of an unrelated civil action. The check for expenses was executed shortly after Clapper received either a partial settlement or a loan from one of the defendants in the civil suit. The civil suit, handled by another attorney, has concluded. Clapper received a net settlement of approximately $490,000.00; however, Farrant's fees have not been paid. Although the check delivered to Farrant had a notation on it indicating that it was intended for "expenses," there was no specific agreement between the attorney and the client when the check was delivered concerning its application. Farrant denied the existence of the notation in response to the Bar Association's inquiry.[6]

### C. Facts Supported by the Record

The instant cause was instituted as a Rule 6 proceeding.[7] Farrant did not interpose a dependency on alcohol as a defense[8] to his actions concerning the application of the

---

5. The body of the letter provides in pertinent part:
   "... I appreciate your check in payment of the expenses in Abbey's case. I would request, however, that you do your best to make some payment toward the attorney fees in that case and the probate case. Those fees total seven thousand, eight hundred and fifty-seven dollars and fifty cents ($7,873.50) to date...."

6. Farrant's reply to the Bar Association inquiry provides in pertinent part:
   "... I deny that the check which Ms. Clapper left with my receptionist in the sum of $6,162.23, contained a notation for 'expenses'. Ms. Clapper had obtained a partial settlement in her aforesaid suit and I asked her to pay for my services and case expenses to date. She agreed. I was taken aback when she did not fully pay. She did not express any disagreement with the billing. It was not until the letter to the Bar that I was made aware of her discontent....
   I deny (sic) that I have ever asked Ms. Clapper for fees of $7,837.50. I applied the check in question against those fees. I believed (sic) there to be no restriction on the disposition of the money paid by Ms. Clapper...."

7. Rule 6.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:
   "Formal proceedings in matters involving misconduct by lawyers shall be brought by direction of the Professional Responsibility Commission...."

8. Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:
   "The term 'personally incapable of practicing law' shall include:
   ... (c) Habitual use of alcoholic beverages or liquids of any alcoholic content, hallucinogens, sedatives, drugs, or other mentally or physically disabling substances of any character whatsoever to any extent which impairs or tends to impair ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law."

check to his fee bill rather than to payment of expenses. However, he did state that he was emotionally upset over domestic problems when he decided to apply the check towards his bill and that he has had problems with the excessive use of alcohol. He indicated that he attends AA meetings on an irregular basis and that he has sought professional counseling. Farrant's testimony leaves no doubt that he understood that Clapper's check was delivered and intended to defray the costs of the litigation.[9]

On September 24, 1993, the trial panel issued its report with recommended findings of fact, conclusions of law and proposed discipline. It found that: 1) the Bar Association failed to prove conversion of funds entrusted to the attorney for a specific purpose; and 2) Farrant made misrepresentations to the Bar Association in response to the grievance. The trial panel recommended a six-month suspension followed by a probationary period of one year in which time Farrant must attend weekly AA meetings and seek professional counseling on a monthly basis.

## I.

**THE BAR ASSOCIATION ESTABLISHED BY CLEAR AND CONVINCING EVIDENCE THAT: A) THE ATTORNEY CONVERTED CLIENT FUNDS ENTRUSTED TO HIM FOR A SPECIFIC PURPOSE; AND B) HE KNOWINGLY MISREPRESENTED THE FACTS SURROUNDING THE COMPLAINT TO THE BAR ASSOCIATION. THIS CONDUCT WARRANTS A ONE–YEAR SUSPENSION FOLLOWED BY A PROBATIONARY PERIOD OF ONE YEAR ACCOMPANIED BY WEEKLY ATTENDANCE AT AA MEETINGS AND MONTHLY SESSIONS WITH A PROFESSIONAL COUNSELOR. COSTS OF $1,138.09 ARE ALSO IMPOSED.**

### A. Conversion of client funds.

In his brief filed before this Court on November 3, 1993, Farrant does not address the trial panel's finding that the evidence was insufficient to establish conversion of client funds entrusted to him for the specific purpose of defraying expenses. However, the Bar Association insists that it has proven its allegations of conversion by clear and convincing evidence. We agree.

Before this Court may impose discipline upon an attorney, the charges must be established by clear and convincing evidence.[10] In disciplinary matters, this tribunal exercises exclusive original jurisdiction.[11] Our review is *de novo* in considering the

9. Testimony of Joe R. Farrant, Transcript of the Proceedings Before the Professional Responsibility Tribunal, August 26, 1993, p. 79 provides in pertinent part:
   "... I'm not sure that I'm in violation of the code, I'm not 100 percent sure of that. That's certainly your decision. But, again, I have got this money, I knew it was for expenses, whether it said that or not, and I sat down and made a conscious decision going through those same thought processes that I've testified to and used it myself not thinking that I was doing anything improper and fully intending to pay Bob Reed when I was paid...."
   Same document, p. 80 provides in pertinent part:
   "... Well, I don't know that I agree with your wordage; but again, my statement is that I recognized that check was intended by Jamee Clapper to be for expenses, whether I read that notation or not, because it was in the exact dollar amount of expenses. And I made a conscious decision to apply that towards fees, not thinking I was doing anything improper...."

Same document, p. 88 provides in pertinent part:
   "... Q. Mr. Farrant, did I understand you to say that when you got this check marked as Exhibit 3 that you knew that that was to pay the expenses in the child custody case?
   A. Yes, sir. When I saw the words, 'expenses' on it, and I don't recall it being there, but because the check was in the exact amount and it was an odd dollar and cents amount, I knew it was Jamee's intention that that was for expenses...."

10. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Braswell*, see note 3, supra.

11. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 824 P.2d 1090, 1093 (Okla.1991); *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 3 at 830, supra; *State ex rel. Oklahoma Bar Ass'n v. McMillian*, 770 P.2d 892, 894 (Okla.1989).

**1284**

record presented as well as the trial panel's disciplinary recommendation.[12] The ultimate decision making authority rests with this Court. Neither the findings of fact of the trial panel nor its view of the weight of the evidence or credibility of the witnesses bind us.[13]

■ Farrant is charged with improperly managing client funds entrusted to him for a specific purpose in violation of Rule 1.15(a) and (b), Rules of Professional Conduct,[14] and Rule 1.4(b), Rules Governing Disciplinary Proceedings.[15] We have defined three levels of applicable culpability when evaluating the mishandling of funds: 1) commingling; 2) simple conversion; and 3) misappropriation, i.e., theft by conversion or otherwise.[16] Commingling takes place when client monies are combined with the attorney's personal funds. Rule 1.4(b) reveals that simple conversion occurs when a lawyer applies a client's money to a purpose other than that for which it was entrusted to the attorney. The third, and most serious infraction, occurs when funds are misappropriated—there is a theft by conversion or otherwise. This happens when an attorney purposefully deprives a client of money by way of deceit and fraud. Lawyers found guilty of intentionally inflicting grave economic harm through mishandling of client funds are guilty of this offense. A finding that the attorney intentionally committed such an act requires imposition of the harshest discipline—disbarment.[17]

Farrant was charged with the second level of culpability—simple conversion. The trial panel found that the Bar Association failed to prove its charge of conversion by clear and convincing evidence.[18] This finding was premised on the fact that no express agreement existed between the client and the attorney that the funds would be used solely to pay litigation expenses. In effect, the trial panel found that the client did not tell Farrant specifically to only pay expenses with her check. A *de novo* review of the record supports a finding that the proof of conversion was sufficient.[19]

Farrant authored a letter on June 26, 1992, addressed to his client, in which he acknowledged the receipt of the check **in payment of expenses** and requested an additional payment towards his fees.[20] In three different passages from the transcript of the trial proceedings, Farrant admitted that he either: 1) knew that the money was for expenses; 2) recognized that the client intended that the check be applied to expenses; or 3) although he did not recall the notation for expenses appearing on the face of the check, that he understood it was intended to defray expenses because of the dollar amount of the check.[21] Farrant's letter and his own sworn testimony provide clear and convincing evi-

12. *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 3 at 830–31, supra; *State ex rel. Oklahoma Bar Ass'n v. Stubblefield*, 766 P.2d 979, 982 (Okla.1988).

13. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, see note 11, supra.

14. Rule 1.15, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, see note 1, supra.

15. Rule 1.4, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 1, supra.

16. *State ex rel. Oklahoma Bar Ass'n v. Cummings*, 863 P.2d 1164, 1172 (Okla.1993); *State ex rel. Oklahoma Bar Ass'n v. Johnston*, 863 P.2d 1136, 1144–45 (Okla.1993). ·

17. *State ex rel. Oklahoma Bar Ass'n v. Cummings*, see note 16, supra; *State ex rel. Oklahoma Bar Ass'n v. Johnston*, see note 16, supra. Rule 1.4(c), Rules Governing Disciplinary Proceedings, see note 1, supra, requires disbarment for theft of a client's funds by conversion.

18. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Braswell*, see note 3, supra.

19. *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 3 at 830–31, supra; *State ex rel. Oklahoma Bar Ass'n v. Stubblefield*, see note 12, supra.

20. See note 5, supra.

21. See note 9, supra.

dence that he intentionally appropriated his client's money to defray attorney expenses when he understood that the money had been entrusted to him for a specific purpose—payment of expenses. It is undisputed that the expense check was deposited in the attorney's operating account and that the funds were appropriated to defray his fee. Farrant commingled client funds with his own in violation of Rule 1.15, Rules of Professional Conduct.[22] He violated Rule 1.4, Rules Governing Disciplinary Proceedings,[23] when he appropriated client monies entrusted to him for a specific purpose.

## B. Misrepresentation of facts surrounding the complaint.

Farrant argues that the evidence is insufficient to support a finding of any misrepresentation either to the Bar Association or to his client. He urges us to dismiss the complaint in its entirety. The Bar Association insists that his initial written response to the Bar Association that his client's check contained no notation for "expenses"[24] and his letter to his client indicating that he had received her check for expenses demonstrate misrepresentations supporting the imposition of discipline.

A photostatic copy of the check written to Farrant by his client contains a notation in the bottom left-hand corner indicating that the check was for "expenses." Farrant's request that the counts relating to misrepresentation be dismissed are premised first on his assertion that he never told the Bar Association that Clapper's check did not contain such a notation. This argument is unpersuasive in light of the letter addressed to the Bar Association, authored and signed by the attorney, on March 23, 1993. The letter provides: "**I deny** that the check which Ms. Clapper left with my receptionist in the sum of $6,162.23, contained a notation for 'expenses'." (Emphasis supplied.)

Farrant's second argument in support of dismissing the charge of misrepresentation relates to communications with his client. The attorney acknowledges that he wrote Clapper a letter on June 23, 1992, indicating that he had received the check in payment of expenses.[25] However, he asserts that no evidence was presented to the trial panel that he intended to use the check for his own benefit **when the letter was mailed.** Essentially, what the attorney asks this Court to do, is to absolve him of culpability on the misrepresentation count because it wasn't a misrepresentation at the time he made it; but it turned out to be misleading at some later date. In disciplinary matters, we not only determine the lawyer's continued fitness to practice law, but we must do so while safeguarding the interests of the public, the courts, and the legal profession.[26] We cannot perform this function and allow the kind of mental jockeying that Farrant purposes. Farrant admits that he made a conscious decision to use a check intended for expenses for his own benefit.[27] His letter to his client indicated that he understood the check was for expenses. The client had every right to believe that was how the money would be applied.

Farrant may have been less than candid with the Bar Association when he denied that

---

**22.** Rule 1.15, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, see note 1, supra.

**23.** Rule 1.4, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 1, supra.

**24.** See note 6, supra.

**25.** See note 5, supra.

**26.** *State ex rel. Oklahoma Bar Ass'n v. Donnelly,* 848 P.2d 543, 545 (Okla.1992); *State ex rel. Oklahoma Bar Ass'n v. Colston,* 777 P.2d 920, 925 (Okla.1989); *State ex rel. Oklahoma Bar Ass'n v. Moss,* 682 P.2d 205, 207 (Okla.1983); *State ex rel. Oklahoma Bar Ass'n v. Harlton,* 669 P.2d 774, 777 (Okla.1983).

**27.** Farrant's brief in response to the findings of the trial panel provides in pertinent part:

"... Respondent has fully admitted that he made a conscious decision to use the funds for fees but there is nothing in the record to indicate that decision was made prior to the letter...."

his client's check contained a notation for expenses. Even if there were no denial and even if he was less than candid, he made a conscious decision to apply funds to his fee which he had given his client every indication would be used to satisfy costs. His actions violated Rule 8.1(a) [28] and Rule 8.4(c),[29] Rules of Professional Conduct and Rule 5.2,[30] Rules Governing Disciplinary Proceedings.

## C. Appropriate discipline.

■ Our responsibility in a disciplinary proceeding is not to punish but to inquire into and to gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interests of the public, of the courts and of the legal profession.[31] Discipline is im-

posed to maintain these goals rather than as punishment for the lawyer's misconduct.[32] When determining discipline for attorney misconduct, the Court compares circumstances with those of previous disciplinary proceedings, examines the attorney's previous record of professional behavior and determines how best to serve the welfare of the public and the integrity of the bar.[33]

■ In two recent cases involving facts similar to those presented here, a four-month and a one-year suspension were entered.[34] In *State ex rel. Oklahoma Bar Ass'n v. Johnston*, 863 P.2d 1136, 1146 (Okla.1993), the respondent was found guilty, in a single court, of commingling and conversion of a client's funds, making a false statement to

---

**28.** Rule 8.1(a), Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, see note 2, supra.

**29.** Rule 8.4(c), Rules of Professional Conduct, 5 O.S.1991, App. 3–A, see note 2, supra.

**30.** Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 2, supra.

**31.** *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, see note 26, supra; *State ex rel. Oklahoma Bar Ass'n v. Colston*, see note 26, supra; *State ex rel. Oklahoma Bar Ass'n v. Moss*, see note 26, supra; *State ex rel. Oklahoma Bar Ass'n v. Harlton*, see note 26, supra.

**32.** *State ex rel. Oklahoma Bar Ass'n v. Johnston*, see note 16 at 2085, supra; *State ex rel. Oklahoma Bar Ass'n v. Raskin*, 642 P.2d 262, 267 (Okla.1982).

**33.** *State ex rel. Oklahoma Bar Ass'n v. Downing*, 804 P.2d 1120, 1123 (Okla.1990).

**34.** In other cases involving similar conduct, the discipline has extended from three-month suspension to disbarment. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 804 P.2d 434 (Okla.1991) (Attorney's failure to return cash entrusted to him by client upon request and application to attorney fee bill, that would be deemed conversion, warranted three-month suspension.); *State ex rel. Oklahoma Bar Ass'n v. Kessler*, 818 P.2d 463 (Okla.1991) (Commingling of client funds, use of client's money for purposes other than those authorized, and misrepresentation to trial court that money has been used for its intended purpose, warrant two-year and one-day suspension.); *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 3, supra (Commingled client funds with his own and used client monies for pur-

poses other than those authorized; and failed to make a full and fair disclosure to the Bar concerning the grievance warranting a one-year suspension.); *State ex rel. Oklahoma Bar Ass'n v. Schlegel*, 808 P.2d 670 (Okla.1991) (Conversion of funds; contempt for failure to pay co-counsel his attorney fees; and development of a scheme in which the attorney inflated the fees to obtain money from the trust. This conduct warranted a disbarment.); *State ex rel. Oklahoma Bar Ass'n v. Moss*, 794 P.2d 403 (Okla.1990) (Improper use of client's money and failure to preserve another client's money in an identifiable separate account is misconduct warranting two-year suspension.); *State ex rel. Oklahoma Bar Ass'n v. Brown*, 773 P.2d 751 (Okla.1989) (Falsely endorsing check payable to client, failing to promptly notify client of receipt of funds previously held by court, affirmatively misleading client concerning distribution of funds, and lying under oath during deposition, warrant six-month suspension, where attorney has practiced law for 15 years and has had no other disciplinary actions against him.); *State ex rel. Oklahoma Bar Ass'n v. Lowe*, 640 P.2d 1361 (Okla.1982) (Neglect of a client's needs, misuse of client's money, and fabrications told to a client warrant suspension from practice of law for two years.); *State ex rel. Oklahoma Bar Ass'n v. Kessler*, 573 P.2d 1214 (Okla.1978) (Wrongful use of a client's money, not ultimately resulting, however, in a loss of money to the client, warrants an 18–month suspension.); *State ex rel. Oklahoma Bar Ass'n v. Hensley*, 560 P.2d 567 (Okla.1977) (Commingling of client's funds warrants suspension from practice for two years, in absence of prior reprimand or misconduct.); *State ex rel. Oklahoma Bar Ass'n v. Geb*, 494 P.2d 299 (Okla.1972) (Commingling of client's funds and failing to promptly remit funds belonging to client warrants 12–month suspension.).

the trial judge, failing to give competent representation, failing to act promptly and failing to communicate with his client. Johnston was suspended from the practice of law for four months and required to pay costs. In *State ex rel. Oklahoma Bar Ass'n v. Cummings*, 863 P.2d 1164, 1174 (Okla.1993), the attorney was charged with commingling and conversion of funds by impermissibly taking money entrusted for a specific purpose and applying it toward a claimed fee. Cummings was suspended for one year and ordered to pay the costs of the disciplinary proceeding. One distinguishing feature between *Johnston* and *Cummings* is that Johnston had not been previously disciplined. Cummings had been censured by this Court in three separate cases. Farrant appeared before this Court on June 10, 1985; and he was privately reprimanded for neglect of a legal matter.

The trial panel recommended a six-month suspension followed by a probationary period of one year in which time Farrant must attend weekly AA meetings and seek professional counseling on a monthly basis. This recommendation was based only upon the trial panel's belief that misrepresentations had occurred. We find that there is clear and convincing evidence to support the allegations of conversion. The investigator has sued the client for payment of the investigation fee. The client entrusted Farrant with monies to satisfy this debt. Instead, Farrant applied the check towards his fee bill. Farrant's conduct more closely resembles that outlined in *Cummings* rather than the actions in *Johnston*. The Bar Association established by clear and convincing evidence that: a) Farrant converted client funds entrusted to him for a specific purpose; and b) that he knowingly misrepresented the facts surrounding the complaint to the Bar Association. This conduct warrants a one-year suspension followed by a probationary period of one year accompanied by weekly attendance at AA meetings and monthly sessions with a

professional counselor. Costs of $1,138.09 are also imposed.[35]

## CONCLUSION

The nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law is solely vested in this Court.[36] Upon a *de novo* review of the record, we find that the Bar Association established by clear and convincing evidence that: a) Farrant converted client funds entrusted to him for a specific purpose; and b) that he knowingly misrepresented the facts surrounding the complaint to the Bar Association. A one year suspension is more in line with similar cases than the trial panel's six-month recommendation. The suspension is to be followed by a probationary period of one year accompanied by weekly attendance at AA meetings and monthly sessions with a professional counselor. Within thirty days of the date of this opinion, Farrant shall pay the costs in this proceeding of $1,138.09. Prompt payment is a precondition to reinstatement.

**RESPONDENT SUSPENDED; PROBATION UPON REINSTATEMENT; COSTS IMPOSED.**

LAVENDER, V.C.J., and HARGRAVE, OPALA, SUMMERS and WATT, JJ., concur.

HODGES, C.J., with whom ALMA WILSON, J., joins, concurring in part, dissenting in part.

I would impose the Professional Responsibility Tribunal's recommendation of suspension for six (6) months.

**35.** Rule 6.16, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 4, supra.

**36.** *State ex rel. Oklahoma Bar Ass'n v. Downing*, see note 33 at 1122, supra; *State ex rel. Okla-homa Bar Ass'n v. Raskin*, see note 32 at 265–66, supra; *Tweedy v. Oklahoma Bar Ass'n*, 624 P.2d 1049, 1052 (Okla.1981).