2013 OK 49

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Robert Bradley MILLER, Respondent.**

**No. SCBD–5732.**

Supreme Court of Oklahoma.

June 25, 2013.

As Corrected June 28, 2013.

Debbie Maddox, Assistant General Counsel, Katherine M. Ogden, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Murray E. Abowitz, Kayce L. Gisinger, Oklahoma City, Oklahoma, for Respondent.

1. Rule 3.3 of the Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A provides:
   (a) A lawyer shall not knowingly:
   (1) make a false statement of fact or law to a tribunal;
   (2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
   (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
   (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take the following remedial measures:
   (A) when a client has offered false evidence, the lawyer shall promptly call upon the client to rectify the same; if the client refuses or is unable to do so the lawyer shall promptly reveal its false character to the tribunal; or
   (B) when a person other than a client has offered false evidence, the lawyer shall promptly reveal its false character to the tribunal.
   (b) The duties stated in paragraph (a) are continuing, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.
   (c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
   (d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

**KAUGER, J.:**

¶ 1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Robert Bradley Miller, (attorney/Miller) with five counts of professional misconduct resulting from circumstances surrounding the alleged irresponsible and deceitful prosecution of murder trials in his capacity as Assistant District Attorney for Oklahoma County. The Bar Association alleged that the respondent's actions involved: dishonesty, fraud, unfairness, lack of candor toward the tribunal, a violation of special responsibilities as a prosecutor and the Rules of Professional Conduct, improperly dealing with unrepresented persons, lack of respect of rights for third parties, improper influence of an official, and a lawyer acting as an advocate in a trial and engaging in conduct prejudicial to the administration of justice.

¶ 2 The Bar Association argues that this conduct was in violation of Rules 3.3,[1] 3.4,[2] 3.5,[3] 3.7,[4] 3.8,[5] 4.1,[6] 4.3,[7] 4.4,[8] and 8.4(a)(c)(d)

The Rules were amended in 2008, but the changes were not substantive. The 1991 version was in effect when the alleged conduct occurred. Accordingly references are to the 1991 versions of the Rules.

2. Rule 3.4 of the Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A provides:
   A lawyer shall not:
   (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
   (b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;
   (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
   (d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;
   (e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or

(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
(1) the person is a relative or an employee or other agent of a client; and
(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

3. Rule 3.5 of the Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A provides:

A lawyer shall not:
(a) seek to influence a judge, juror, prospective juror or other decision maker except as permitted by law or the rules of a tribunal;
(b) in an adversary proceeding, communicate or cause another to communicate as to the merits of the cause, with a judge or an official before whom the proceeding is pending except:
(1) in the course of the official proceeding in the cause;
(2) in writing if the lawyer promptly delivers a copy of the writing to the opposing counsel or to the adverse party if not represented by a lawyer;
(3) orally upon notice to opposing counsel or to the adverse party if not represented by a lawyer; and
(4) as otherwise authorized by law; or
(c) communicate directly or through another with a juror or prospective juror except as permitted by law or the rules of court; or
(d) engage in conduct intended to disrupt a tribunal.

4. Rule 3.7 of the Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

5. Rule 3.8 of the Oklahoma Rules of Professional Conduct 5 O.S.1991 Ch. 1, App. 3–A provides:

The prosecutor in a criminal case shall:
(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;
(b) make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining counsel and has been given reasonable opportunity to obtain counsel;
(c) not seek to obtain from an unrepresented accused a waiver of important pretrial rights, such as the right to a preliminary hearing;
(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal;
(e) exercise reasonable efforts to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6;
(f) except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused; and
(g) not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless the prosecutor reasonably believes:
(1) the information sought is not protected from disclosure by an applicable privilege and
(2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution and
(3) there is no other feasible alternative to obtain the information.
The lawyer upon whom a subpoena is served shall be afforded a reasonable time to file a motion to quash compulsory process of his/her attendance. Whenever a subpoena is issued for a lawyer who then moves to quash it by invoking attorney/client privilege, the prosecutor may not press further in any proceeding for the subpoenaed lawyer's appearance as a witness until an adversary in camera hearing has resulted in a judicial ruling which resolves all the challenges advanced in the lawyer's motion to quash.

6. Rule 4.1 of the Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A provides:

In the course of representing a client a lawyer shall not knowingly:
(a) make a false statement of material fact or law to a third person; or
(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

7. Rule 4.3 of the Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A provides:

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. A lawyer shall not give advice to

and (e)[9] of the Rules of Professional Conduct and Rule 1.3,[10] of the Rules Governing Disciplinary Proceedings. After a lengthy, fourteen day evidentiary hearing held between June 6, and June 26, 2012, the trial panel recommended a one year suspension and payment of the entire costs of these proceedings which amounted to $61,920.30. Upon a *de novo* review,[11] we hold that the respondent's conduct warrants a 180 day suspension and the imposition of partial costs.

## FACTS AND PROCEDURAL BACKGROUND

¶3 The facts and procedural background of this cause span over 20 years and concern two murder trials with numerous appeals. The report and recommendation of the Professional Responsibility Tribunal (PRT) of the Bar Association provides a detailed, sixty-eight page accurate recitation of the facts and procedural history, along with its findings. After a thorough and *de novo* review of the record, we agree with the PRT's review of the facts and procedural background, and hereby adopt and incorporate its report

filed September 28, 2012, as an appendix to this opinion to supplement the brief facts provided herein.

¶4 On June 24, 1993, seventeen year old gang member, Derrick Smith, and a fourteen year old acquaintance, Shauna Farrow, were walking home from a party at the Ambassador Court Apartments in Oklahoma City around 11:00 p.m. A car approached them, the driver stopped, opened the doors, and began firing guns at them. Farrow was gunned down and killed in the drive-by shooting and Smith's leg was injured. Smith was the only witness and he gave, and continues to give to this day, various conflicting statements as to what occurred.

¶5 Smith's rival gang members, Yancy Lyndell Douglas and Paris LaPriest Powell were each convicted of first degree malice murder and shooting with intent to kill. They were tried separately, almost two years apart,[12] and both juries assessed the death penalty for Farrow's death, and life imprisonment for Smith's injury. Smith was the key witness at both trials who identified Douglas

such a person other than the advice to secure counsel, if the interests of such person are, or have a reasonable possibility of being, in conflict with the interests of the client.

**8.** Rule 4.4 of the Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A provides:

(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.
(b) A lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender.

**9.** Rule 8.4 of the Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;
(e) state or imply an ability to influence improperly a government agency or official; or
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

**10.** Rule 1.3 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991 Ch. 1, App. 1–A provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

**11.** *State ex rel. Oklahoma Bar Ass'n v. Phillips,* 2002 OK 86, ¶2, 60 P.3d 1030; *State ex rel. Oklahoma Bar Ass'n v. Erickson,* 2001 OK 66, ¶14, 29 P.3d 550; *State ex rel. Oklahoma Bar Ass'n v. Israel,* 2001 OK 42, ¶13, 25 P.3d 909; *State ex rel. Oklahoma Bar Ass'n v. Smolen,* 2000 OK 95, ¶7, 17 P.3d 456.

**12.** The cases were severed and Douglas was tried in October of 1995, whereas Powell was tried in May of 1997.

and Powell as the shooters. Both cases were appealed to the Oklahoma Court of Criminal Appeals and direct appeal relief and post conviction relief were denied. Relief was also sought in the federal courts and it culminated in the 10th Circuit Court of Civil Appeals' opinion in *Douglas v. Workman*, 560 F.3d 1156 (10th Cir.2009), which resulted in the reversal of both convictions. The basis of this reversal was the respondent's "egregious conduct" as prosecutor. The Oklahoma County District Attorney's office has declined to retry Douglas and Powell.

¶ 6 The Bar Association filed a complaint with the Chief Justice on January 25, 2011, against the respondent, nearly eighteen years after the shootings occurred. The initial complaint contained four counts of misconduct, but another count was added almost a year later on January 18, 2012. The filing of the complaint was precipitated by the 10th Circuit Court of Appeals' opinion in *Douglas v. Workman*, supra. However, to avoid the respondent's due process complaints,[13] neither the Bar Association nor the PRT relied on the finding or facts of the federal proceedings to prove its alleged misconduct. Instead, it independently introduced evidence specifically related to the Oklahoma Rules of Professional Conduct, and the PRT gave no deference to the federal court's findings and neither do we. Rather, on September 28, 2012, the PRT made its own factual determinations on which to base its recommended

discipline. On October 23, 2012, the National Association of Criminal Defense Lawyers filed a motion for leave to file an amicus brief which the Chief Justice denied on October 25, 2012.[14]

¶ 7 The cause was assigned to this office on January 9, 2013. The 10th Circuit's findings notwithstanding, the dispositive issue here is whether the circumstances which led to reversal of the death penalty conviction for prosecutorial misconduct also constitute misconduct requiring attorney discipline.

## STANDARD OF REVIEW

¶ 8 The responsibility of this Court in disciplinary proceedings is not to punish but rather to inquire into and to gauge a lawyer's continued fitness to practice law, with a purpose of safeguarding the interest of the public, of the courts, and of the legal profession.[15] The nondelegable, constitutional responsibility to regulate the practice and the ethics, licensure, and discipline of legal practitioners is solely vested in this Court.[16]

¶ 9 In disciplinary matters, this Court possesses exclusive original jurisdiction.[17] To keep the investigatory and adjudicatory functions separate in bar disciplinary proceedings, this Court has assigned limited duties to the Oklahoma Bar Association, and the PRT.[18] In performing their roles, the Bar and PRT act as an aid to the Court, but do not act on behalf of the Court.[19] We are not

---

13. The respondent argued, and the PRT and OBA agreed, that the findings of the federal courts could not be binding on the respondent as he was not a party to the proceedings, nor represented by counsel, nor given the opportunity to confront witnesses.

14. We note that an application for a sur-reply to the OBA's reply brief was filed on January 22, 2013 and the OBA filed a response/objection on January 23, 2013.

15. *State ex rel. Oklahoma Bar Ass'n v. Bolton*, 1995 OK 98, ¶ 15, 904 P.2d 597; *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 1992 OK 164, ¶ 14, 848 P.2d 543; *State ex rel. Oklahoma Bar Ass'n v. Colston*, 1989 OK 74, ¶ 20, 777 P.2d 920; *State ex rel. Oklahoma Bar Ass'n v. Moss*, 1983 OK 104, ¶ 12, 682 P.2d 205.

16. *State ex rel. Oklahoma Bar Ass'n v. Holden*, 1995 OK 25, ¶ 1, 895 P.2d 707; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, 1994 OK 13, ¶ 8,

867 P.2d 1279; *Tweedy v. Oklahoma Bar Ass'n*, 1981 OK 12, ¶ 4, 624 P.2d 1049.

17. Rule 1.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch.1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Holden*, see note 16, supra; *State ex rel. Oklahoma Bar Ass'n v. McMillian*, 1989 OK 16, ¶ 5, 770 P.2d 892.

18. *State ex rel. Oklahoma Bar Ass'n v. Downes*, 2005 OK 33, ¶ 25, 121 P.3d 1058; *Tweedy v. Oklahoma Bar Ass'n*, see note 16, supra at ¶ 6. Title 5 O.S.2011, Ch. 1, App., art. 1, § 1 provides: The Oklahoma Bar Association is an official arm of this Court, when acting for and on behalf of this Court in the performance of its governmental powers and functions.

19. See, *State ex rel Oklahoma Bar Ass'n v. Downes*, see note 18, supra; In *Tweedy v. Oklahoma Bar Ass'n*, see note 16, supra, we said: In contrast to the principles which affect administrative agencies, due process is offended

bound by agreed findings, conclusions of law or recommendations for discipline.[20] Rather, the ultimate responsibility for imposition of professional discipline is solely within the purview of this Court.[21]

¶ 10 In considering the record before us, as well as the recommendations of the Professional Responsibility Tribunal, our standard of review is *de novo*.[22] Before we may impose discipline upon an attorney, the charges must be established by clear and convincing evidence.[23] The function of disciplinary proceedings is not punishment. The purpose of discipline is to gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts and of the legal profession.[24]

¶ 11 We have reviewed the evidence and find that the PRT's findings of fact are supported by the record, but do not agree that all of the allegations of misconduct were established by clear and convincing evidence. Nor do we agree with the recommended discipline or assessment of the amount of costs.

### COUNT 1 OF MISCONDUCT: DERRICK SMITH

¶ 12 Count 1 of the misconduct centers around the surviving drive by victim, Derrick Smith, and it contains two primary allega-

tions: 1) that Smith and the respondent "cut a deal" for Smith to identify Douglas and Powell as the gunmen in exchange for favorable treatment on Smith's own pending criminal charges, but neglected to disclose such a deal to the jury as required by law; and 2) that the respondent interjected himself into Smith's criminal cases in an attempt to secure favorable treatment for Smith as per their "secret" agreement.

¶ 13 The evidence regarding Smith's account of events is questionable at best. Smith is a career criminal who began his career as a juvenile with more than a dozen juvenile violations and visits to juvenile detention facilities, before being charged and/or convicted of the following offenses as an adult gang member: aggravated assault with a gun, shooting with intent to kill, trafficking cocaine, possession of cocaine, receiving stolen property, concealing stolen property, domestic violence, assault and battery, assessory to murder, and armed robbery.

¶ 14 Smith has, over nearly 20 years, given so many different versions of what happened the night of the shooting with varying details that it is clear that his testimony/story varies, depending on who is asking the questions and what he thinks he will get in exchange for his answers. We agree with the trial panel that he is not a credible witness. Con-

when a judicial institution functions both as an organ of enforcement and adjudication. Concentrating the powers of judge and prosecutor in the same person or body poses an unreasonably high risk of compromising the protected and cherished value of judicial detachment and neutrality.

Throughout this proceeding, the record reflects that the Bar Association mistakenly represented to witnesses that it was acting on behalf of the Oklahoma Supreme Court by thanking them for their participation on our behalf. While it does function as a body which aids the Court in performance of its duties, it does not act on our behalf as explained by the rationale of *Tweedy*, supra.

20. *State ex rel. Oklahoma Bar Ass'n v. Erickson*, 2001 OK 66, ¶ 14, 29 P.3d 550; *State ex rel. Oklahoma Bar Ass'n v. Israel*, 2001 OK 42, ¶ 13, 25 P.3d 909.

21. *State ex rel. Oklahoma Bar Ass'n v. Israel*, see note 20, supra; *State ex rel. Oklahoma Bar Ass'n v. Bolusky*, 2001 OK 26, ¶ 14, 23 P.3d 268; *State*

*ex rel. Oklahoma Bar Ass'n v. Dershem*, 2001 OK 7, ¶ 12, 21 P.3d 639.

22. *State ex rel. Oklahoma Bar Association v. Farrant*, 1994 OK 13, ¶ 7, 867 P.2d 1279; *State ex rel. Oklahoma Bar Association v. Gasaway*, 1991 OK 33, ¶ 9, 810 P.2d 826; *State ex rel. Oklahoma Bar Association v. Braswell*, 1983 OK 63, ¶ 9, 663 P.2d 1228.

23. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991 Ch. 1 App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Wolfe*, 1997 OK 47, ¶ 11, 937 P.2d 988; *State ex rel. Oklahoma Bar Ass'n v. Meek*, 1996 OK 119, ¶ 0, 927 P.2d 553; *State ex rel. Oklahoma Bar Ass'n v. Holden*, see note 16, supra.

24. *State ex rel. Oklahoma Bar Association v. Meek*, see note 23, supra; *State ex rel. Oklahoma Bar Association v. Bolton*, see note 15, supra at ¶ 12; *State ex rel. Oklahoma Bar Association v. Donnelly*, see note 15, supra at ¶ 11; *State ex rel. Oklahoma Bar Association v. Colston*, see note 15, supra at ¶ 20.

sequently, any of the Bar's accusations which rely on Smith's version of events have not been proven by clear and convincing evidence and do not serve as the basis for discipline — including his testimony that he cut a "deal" with respondent in exchange for testimony without disclosing such a deal to the jury.

¶ 15 Nevertheless, the record is clear that, whether a deal was cut or not, respondent did take it upon himself to attempt to help Smith after he testified for the state. While the evidence may infer that an "unspoken" deal occurred which was never disclosed to the defense or to Smith's appellate attorneys, we also agree with the trial panel that the evidence is far from clear and convincing that the respondent's assistance, if any, resulted in violations of the Rules of Professional Conduct. However, with regard to this count, the trial panel still determined that the respondent engaged in conduct that was prejudicial to the administration of justice, thus violating Rule 8.4(d) of the Oklahoma Rules of Professional Conduct.[25] We disagree that the evidence reflects a clear and convincing violation of this rule.

## COUNT II OF MISCONDUCT: THE LASTER SISTERS

¶ 16 Smith had three cousins who are referred to as the Laster sisters who, at the time of the drive-by shooting, were 14–year–old Jackie, 12–year–old Andrea, and 9–year–old Tiffany. Although the sisters did not witness the drive-by shooting, they were involved in both the Powell and Douglas proceedings. Andrea testified at both trials that she had seen Douglas the day before the shooting in a car identified by the respondent as the vehicle involved in the shooting. She stated that he was at a nearby apartment complex in the car and waving a gun around. Apparently Jackie was with her, but Jackie was uncooperative and remains so today.

¶ 17 In 2001, Andrea, who was also incarcerated at the time, recanted her story and insisted that she was coerced by the respon-

dent to testify falsely at the trials. She has also offered multiple, contradicting stories, and she also testified that she would do anything she could to help Derrick. Her credibility as a witness is not unlike her cousin, Derrick Smith's. Nevertheless, other clear and convincing evidence does reveal irregularities in the way in which information and testimony was obtained from the Laster sisters.

¶ 18 For example, fake subpoenas which are not authorized by statute but were apparently, routinely issued under the direction of the District Attorney, were utilized to require the girls meet with the prosecutor. Writs of Attachments issued for Jackie and Andrea were based on incorrect information, and arrest warrants were issued in an attempt to force them into cooperating with the respondent. The girls were held in custody of the Oklahoma County Sheriff at one point during the Powell proceeding, and were admonished by the respondent and trial judge about their obligation to testify without the presence of defense attorneys.

¶ 19 Even though the girls were minors, there is no evidence that any steps were taken: to secure parental consent and/or notification, to advise them of their rights, to secure or advise of representation by counsel, or to appoint counsel for them. The respondent prepared an Application for a Writ of Attachment for Andrea during the Douglas trial to be brought before the trial judge without delay, even though the writ was based upon her failure to appear pursuant to a proper subpoena, and there is no evidence that such a subpoena was ever issued. A subpoena duces tecum was issued to the principal of Tiffany's school, even though she was without any personal knowledge of the events. Andrea and Jackie were arrested for failure to appear on subpoenas that are not evidenced in the court records. Again, the trial panel determined that the respondent engaged in conduct that was prejudicial to the administration of justice, thus violating Rule 8.4(d) of the Oklahoma

---

**25.** Rule 8.4(d), Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A, see note 9, supra.

Rules of Professional Conduct.[26] We agree with the trial panel.

## COUNT III: THE GREERS

¶ 20 On the night of the shooting, Linda Greer told police at the scene that she heard what sounded like fireworks popping and looked out her front door to observe a small, white car leaving at a high rate of speed. She then called to her husband who was in bed and he ran out to assist the victims. There was no further police officer follow up with the Greers account of what occurred.

¶ 21 The respondent contacted the Greers by telephone interview a few weeks before the Douglas trial and discovered that, contrary to Derrick Smith's account of the suspect car pulling into a driveway and changing drivers, Linda Greer did not see the vehicle stop or pull into a driveway. This information could have been exculpatory or impeachment evidence to the State's key witness— Smith. The respondent did not expressly disclose this information to the defense at either the Douglas or Powell trials. This evidence was not discovered/utilized until 1998 when Powell's appellate counsel discovered and pursued the matter further.

¶ 22 In handling the evidence, respondent left notes in his prosecutor's file that might have informed the defense at both the Douglas and Powell trials of the Greer interview and corresponding evidence. Additionally, the District Attorney's office had an "open file" policy which also could have allowed the discovery by the defense counsel. The trial panel determined that the respondent violated Rule 3.8(d) of the Oklahoma Rules of Professional Conduct involving a prosecutor's duty to timely disclose all negating or mitigating evidence or information because the respondent did not expressly disclose the information to the defense.[27] We agree that the only practice is to expressly disclose the information to the defense, and that non-disclosure was a violation of this rule under the facts presented.

## COUNT IV MISCONDUCT: PROSECUTOR DISCLOSURE

¶ 23 This count is similar to Count I in that it involves conduct surrounding Derrick Smith and the alleged "agreement" for testimony and its disclosure. The genesis of this Count are that: 1) the respondent's conduct was **wilful** regarding the eliciting of false testimony from Derrick Smith and using that false testimony; and 2) the respondent engaged in **active concealment** to cover up an agreement between Smith and Respondent for help in exchange of testimony.

¶ 24 The trial panel made six succinct findings with regard to this count of misconduct. With the exception of the finding that there was clear and convincing evidence that the respondent engendered in Derrick Smith the belief that he would render him assistance in his pending criminal matters if Smith testified in support of the State in both the Douglas and Powell murder trials, we agree with the Trial Panel. Those findings are:

1. There is not clear and convincing evidence that respondent elicited false testimony from Derrick Smith;

2. There is not clear and convincing evidence that the respondent violated his duty to turn over to defense counsel exculpatory evidence regarding Smith during the Douglas trial;

3. There was clear and convincing evidence that the respondent had attempted to assist Smith subsequent to the Douglas trial-whether it was pursuant to an express or merely an implied "deal," it did occur;

4. By the time of the Powell trial, respondent had taken affirmative steps in an attempt to aid Smith in his criminal proceedings and the respondent had a duty to disclose his action in the Powell trial; and

5. There is no evidence to suggest that respondent possesses a file or any other information related to these proceedings at

---

26. Rule 8.4(d), Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A, see note 9, supra.

27. Rule 3.8(d) of the Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A, see note 5, supra.

his current law firm which has not been turned over to the Bar Association.

¶ 25 The trial panel determined that the respondent's conduct violated the Oklahoma Rules of Professional Conduct Rule 3.4(a) [unlawfully obstruct another party's access to evidence], (b) [falsify evidence or unlawfully induce a witness] and (e) [allude to matters in trial that are not supported by evidence],[28] and Rule 3.8(d) [timely disclose evidence] and Rule 8.4(d) [engage in conduct prejudicial to the administration of justice]. We agree that violations of Rule 3.4(a), Rule 3.8(d) and Rule 8.4(d) occurred.

### COUNT V: SUSPECT VEHICLE

¶ 26 This final count relates to the suspect's car used in the drive by shooting, photographic evidence of the car used at trial, various interviews of witnesses regarding the car as well as the chain of custody and search of the car. We agree with the trial panel that the respondent was less than forthcoming with information regarding his interview with a jailhouse informant concerning the car. However, we cannot agree with the trial panel that, the discovery of such an infraction, decades later, hinging on a jailhouse informant whose name was known to defense counsels at the time of the trials equates to a violation of the Rules of Professional Conduct. It is unclear exactly how much information was disclosed to defense

counsels, and whether defense counsels even bothered to pursue the information.

### DISCIPLINE IMPOSED

¶ 27 Discipline is fashioned to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct.[29] Although this Court strives to be evenhanded and fair in disciplinary matters, discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors.[30] Discipline should be sufficient to persuade the attorney that such conduct will not be tolerated.[31] Mitigating circumstances may be considered in evaluating both the attorney's conduct and assessing the appropriate discipline.[32]

¶ 28 This Court is the sole arbiter of bar discipline.[33] We are free to attribute as much weight to the trial panel's recommendations as we see fit.[34] Under the facts presented, appropriate discipline falls somewhere between a private reprimand and a year suspension. Most recently, private reprimands have involved: failure to respond to grievances, failure to account for client funds and communicate with clients, selling marital property and concealing it, pleading nolo contendere with pointing a firearm, entering a plea to child abuse by injury. Cases of prior public censure have fallen into categories such as sexual contact or inappropriate sexual advances,[35] dismissals of client's cases, or

28. Rule 3.4 of the Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A, see note 2, supra.

29. *State ex rel. Oklahoma Bar Ass'n v. Patterson,* 2001 OK 51, ¶ 29, 28 P.3d 551; *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, ¶ 0, 914 P.2d 644; *State ex rel. Oklahoma Bar Ass'n v. Bolton,* see note 15, supra at ¶ 16.

30. *State ex rel. Oklahoma Bar Ass'n v. Doris,* 1999 OK 94, ¶ 38, 991 P.2d 1015; *State ex rel. Oklahoma Bar Ass'n v. Rozin,* 1991 OK 132, ¶ 10, 824 P.2d 1127.

31. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 1997 OK 55, ¶ 15, 938 P.2d 744.

32. *State ex rel. Oklahoma Bar Ass'n v. Southern,* 2000 OK 88, ¶ 35, 15 P.3d 1; *State ex rel. Oklahoma Bar Ass'n v. Taylor,* 2000 OK 35, ¶ 33, 4 P.3d 1242.

33. *State ex rel. Oklahoma Bar Ass'n v. Rennie,* 1997 OK 108, ¶ 20, 945 P.2d 494; *State ex rel. Oklahoma Bar Ass'n v. Butler,* 1992 OK 150, ¶ 9, 848 P.2d 540.

34. *State ex rel. Oklahoma Bar Ass'n v. Rennie,* see note 33, supra; *State ex rel. Oklahoma Bar Ass'n v. Wilkins,* 1995 OK 59, ¶ 12, 898 P.2d 147.

35. *State ex rel. Oklahoma Bar Ass'n v. Corrales,* 2012 OK 64, 280 P.3d 968 [Respondent entered an Alford Plea on Count I, of misdemeanor Assault and Batter, based on allegations that he willfully and unlawfully committed an assault and battery upon his girlfriend. He was sentenced to a one year deferred sentence. He pled nolo contendre on Counts II and III, which were assault upon two different women. Respondent was sentenced to a one-year deferred sentence in each case. The sentences in all three misdemeanors were to run consecutively, resulting in a total of three years.]; *State ex rel. Oklahoma Bar*

failing to do anything on a client's behalf[36] or

Ass'n v. Murdock, 2010 OK 32, 236 P.3d 107 [Two counts of Sexual Battery charged in violation of 21 O.S. 1123(D). One count of Sexual Battery was dismissed and attorney entered an Alford plea on the other count, which was reduced to the misdemeanor of Outraging Public Decency, in violation of 21 O.S. 22. He was sentenced to one year probation, 50 hours of community service, victim restitution and counseling]; State ex rel. Oklahoma Bar Ass'n v. Wilburn, 2006 OK 50, 142 P.3d 420 [The attorney was charged with two felony counts of sexual battery arising from his contact with female security guards at a county courthouse. Eventually, he pled guilty to misdemeanor charges, and he received a one-year suspended sentence as to each count.]; State ex rel. Oklahoma Bar Ass'n v. Groshon, 2003 OK 112, 82 P.3d 99 [The record established that the female client hired the attorney to handle her divorce action. Recognizing that she did not have the funds to pay him at that time for his legal services, the attorney agreed to allow her to make payments whenever she was able to do so. However, the attorney did not bill her for services. The lawyer admitted to making numerous suggestive comments to the client and engaging in inappropriate touching of a sexual nature during the course of his representation. At least one of the episodes that took place in the lawyer's office was tape recorded by the client. The client indicated she attempted to find new counsel but was unable to afford their fees.]; State ex rel. Oklahoma Bar Ass'n v. Foster, 2000 OK 4, 995 P.2d 1138 [Attorney entered a plea of nolo contendre to the charge of assault with the intent to commit a felony and the imposition of a five-year deferred sentence. The attorney unlawfully, wilfully, and feloniously touched A.M., a minor child under the age of eighteen (18) years, with the intent to commit the felony of procuring obscene and indecent photographs in violation of 21 O.S. Supp.1996 1021.2.]; State ex rel. Oklahoma Bar Ass'n v. Garrett, 2005 OK 91, 127 P.3d 600 [The attorney sexually battered two young women by grabbing their breasts and their buttocks while he was intoxicated. The attorney was arrested for felonious sexual battery while intoxicated and pled guilty to misdemeanor battery.]; State ex. rel. Oklahoma Bar Ass'n v. Copeland, 1994 OK 21, 870 P.2d 776 [Respondent purposefully touched client's breast and related that sexual favors had been performed for him by another female client.]; State ex rel. Oklahoma Bar Ass'n v. Sopher, 1993 OK 55, 852 P.2d 707 [While in the attorney's office, the attorney touched and looked down the client's blouse. The attorney also did the same thing to the client's mother.].

**36.** State ex rel. Oklahoma Bar Ass'n v. Kelley, 2002 OK 10, 48 P.3d 777 [The first count of the complaint involved the attorney's representation of a client in a workers' compensation case. The complaint asserted that the attorney was not diligent in her representation, the attorney did not keep the client reasonably informed about the matter and failed to expedite the litigation consistent with the client's interests. The second count against the attorney regarded the OBA's request for the attorney to respond to a grievance filed against her. After numerous requests, the attorney failed to respond, and a subpoena was issued for her deposition and production of documents.]; State ex rel. Oklahoma Bar Ass'n v. Minter, 1998 OK 59, 961 P.2d 208 [Respondent was hired to represent client's son in a first-degree murder case. The son was convicted and sentenced to life in prison without parole. The Respondent filed a notice of intent to appeal with the District Court in Coal County. However, he failed to also file a designation of record in the district court as required by law. Because the Respondent failed to file the proper papers to perfect the appeal, OIDS did not accept the case. The client attempted to contact the Respondent numerous times both by telephone and letter regarding the appeal. Respondent did not return any of her calls or respond to any of her letters. After a grievance was filed, the Complainant's office sent three letters to Respondent over the course of several weeks. Respondent did not respond to any of the letters.]; State ex rel. Oklahoma Bar Ass'n v. Prather, 1996 OK 87, 925 P.2d 28 [The attorney failed to inform his client that her case had been dismissed on two separate occasions. Also, he did not inform her that he had refiled her case. The client unsuccessfully telephoned the attorney on several occasions to request status reports and information pertaining to her case. The attorney did not return most of her phone calls and he did not inform the client of his change of address after any of his four office moves during the time he represented her.]; State ex rel. Oklahoma Bar Ass'n v. McManus, 1993 OK 66, 852 P.2d 727 [The parties agreed that the attorney commingled personal funds with the trust account for client's funds. The attorney failed to communicate with a client, who filed a grievance against him, and to answer the Bar's letter, requesting that he respond to the grievance. The attorney's failed to timely pursue a trial for a personal injury case. The attorney's failed to respond to the Bar's letters regarding the grievance filed by the referring attorney of the injury case.]; State ex rel. Oklahoma Bar Ass'n v. Angel, 1993 OK 2, 848 P.2d 549 [The attorney was retained by the clients in a federal action alleging that they were fraudulently induced to accept a change in their commission arrangement. The attorney engaged in substantial discovery. A motion for summary judgment was filed by defendants in the action and gave the clients 35 days to respond. An extension was granted until. The attorney was unable to formulate a reasonable objection to the motion and requested a second extension. The attorney failed to file a response by that second extension date, and the trial court granted defendant's motion for summary judgment.]; State ex rel. Oklahoma Bar Ass'n v. Busch, 1992 OK 68, 832 P.2d 845 [Respondent failed to appear and a client's case was subsequently dismissed. Re-

other types of client's case mismanagement.[37]

¶29 We must recognize that the respondent was acting under the direction, supervi-

spondent was retained to prosecute a suit arising from an automobile collision and he filed the suit but never caused a summons to be issued. The district court dismissed the case without prejudice because no summons had been issued. The respondent failed to notify the client that his case had been dismissed. The stipulations also state that the respondent claims that he was never notified of the dismissal and returned the case-file to his client prior to the dismissal. The respondent had been previously privately reprimanded the Professional Responsibility Commission for violating the mandatory response provisions of Rule 5.2 and the Bar included this Count to enhance discipline.]; *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 1992 OK 164, 848 P.2d 543 [The attorney failed to initiate a collection action on his clients' behalf, despite his representations to the clients that he had in fact done so.]; *State ex rel. Oklahoma Bar Ass'n v. Braswell*, 1983 OK 63, 663 P.2d 1228 [The attorney failed to file a tort claim on behalf of a client within the limitations period. It was immaterial whether the attorney had assigned the matter to a law clerk or had simply misplaced the case. His procedures for monitoring unfiled cases were clearly inadequate.].

37. *State ex rel. Oklahoma Bar Ass'n v. Townsend*, 2012 OK 44, 277 P.3d 1269 [The attorney missed court dates resulting in rulings adverse to clients, failed to communicate, lacked diligence, and did not return files to clients in a timely manner.]; *State ex rel. Oklahoma Bar Ass'n v. Martin*, 2010 OK 66, 240 P.3d 690 [Respondent's utter failure to supervise any of a non-attorney's work activities enabling him to engage in the unauthorized practice of law by performing legal services without proper supervision by a licensed lawyer. Also, respondent was vicariously liable in disciplinary responsibility for all the misdeeds of his unlicensed employee which went unnoticed until the victim complained.]; *State ex rel. Oklahoma Bar Ass'n v. Funk*, 2005 OK 26, 114 P.3d 427 [Respondent allowed the client trust account to fall below the amount held on behalf of the client. The court found that the attorney had no intent to commingle funds but he had mismanaged the client account.]; *State ex rel. Oklahoma Bar Ass'n v. Taylor*, 2003 OK 56, 71 P.3d 18 [Respondent knowing one or more of his client's medical providers were claiming interest in the settlement proceeds he received, and not knowing Texas law as to exactly what their interest was or exactly how to distribute the proceeds appropriately under the law, the attorney disbursed much of the proceeds to himself. He then embarked on a course of potentially indefinite delay with regard to the remaining proceeds, even though he knew either one or more of the providers or his client was entitled to the bulk of the funds he retained.]; *State ex rel. Oklahoma Bar Ass'n v. Erickson*, 2001 OK 66, 29 P.3d 550 [Attorney violated rule providing that it is profes-

sional misconduct to state or imply ability to improperly influence government agency or official and rule providing that it is professional misconduct to violate or attempt to violate professional conduct rules, to knowingly assist or induce another to do so, or to do so through acts of another.]; *State ex rel. Oklahoma Bar Ass'n v. Simank*, 2001 OK 13, 19 P.3d 860 [The undisputed facts were that respondent persistently failed to respond to 10 letters from the bar requesting information and also failed to sign for an additional 5 certified letter that were mailed to his official bar address.]; *State ex rel. Oklahoma Bar Ass'n v. Brewer*, 1999 OK 101, 998 P.2d 605 [Respondent failed to keep his clients reasonably informed of the status of their cases, failed to respond to their reasonable requests for information, and failed to make reasonable efforts to expedite litigation. The court also found the evidence supported a finding that respondent failed to answer complainant's request for information regarding the grievances filed against him.]; *State ex rel. Oklahoma Bar Ass'n v. Bills*, 1997 OK 151, 951 P.2d 1090 [The attorney was representing a wife in a divorce proceeding and accepted a retainer against which he could charge his fees as they were earned. The client discharged the attorney and requested the return of the unused portion of the retainer and an accounting. The attorney had not kept an account of the hours he had spent on the file and had to recreate it from memory.]; *State ex rel. Oklahoma Bar Ass'n v. Blackburn*, 1991 OK 35, 812 P.2d 379 [Two counts were filed against respond. 1) Because of his substance-abuse problems, the attorney neglected to file a brief on behalf of his client in a criminal appeal. 2) A wife contacted Blackburn by telephone and recruited him to handle her divorce. In this conversation, she revealed a number of factors about her finances, requests for alimony and child support, and custody considerations. Later Blackburn wrote to wife stating that he had been contacted by her husband and was filing suit for divorce on the husband's behalf. Blackburn had evidently been a family friend of the husband for a number of years.]; *State ex rel. Oklahoma Bar Ass'n v. Borders*, 1989 OK 101, 777 P.2d 929 [Attorney failed to communicate with criminal defendant's mother and with public defender's office and failed to preserve property of client and to act diligently to represent client's interests.]; *State ex rel. Oklahoma Bar Ass'n v. McNaughton*, 1986 OK 25, 719 P.2d 1279 [The attorney, who had accepted representation of an adult defendant charged with the felony offense of lewd molestation of a minor, also served as counsel in prosecution related matters, for the alleged underage victim of the crime, her minor sister, and their adult mother. The attorney argued that he had made a full disclosure to the mother.].

sion, and policies of the then elected District Attorney. Responsibility for the respondent's conduct and trial tactics falls partially to the District Attorney as the chief administrator of the office.[38] Although he exercised his rights to object and disagree to the charges, the respondent has also been fully cooperative with the Bar Association in this lengthy and tedious process.[39]

¶ 30 Hindsight is 20–20. Instances of prosecutorial misconduct from previous decades, such as withholding evidence, were often met with nothing more than a reprimand or a short suspension.[40] Some scholars writing during that time theorized that discipline was imposed so rarely and so lightly that it was not effective in deterring misconduct.[41] Reprehensible though Miller's conduct may have been, and even if such misconduct is punished more harsly when it occurs now, Miller's actions took place decades ago and it would be unfair to hold him to a harsher standard than he would have been subjected to when his actions took place. Make no mistake, if this conduct were to happen today, the punishment would have been much more severe. This is not to say that the Court condones his conduct, merely that we are not inclined to apply the harsher standards of today to conduct that occurred at a time when it was punished lightly, if at all.

■ ¶ 31 The trial panel recommended, as appropriate punishment, a one year suspension and the payment of costs. We disagree. We determine that, given respondent's misconduct, his lack of prior disciplinary history, the length of time that has passed since the violations occurred, and the discipline administered in similar cases, respondent's conduct warrants a 180 day suspension and only a partial payment of costs. Consequently, we decline to impose the one year suspension as recommended by the trial panel and instead suspend for 180 days the respondent. The Bar Association seeks total costs in the amount of $61,920.00. However, the more reasonable cost of 1/5 of the total, $12,834.00, is more commensurate with the violations which were actually proven. Accordingly, we impose the payment of costs in the amount of $12,834.00 which may be paid in three, equal, monthly installments beginning from the date this opinion is handed down.

---

38. The Bar Association relies on several cases from other jurisdictions in which prosecutorial misconduct has led to disbarment. The facts of these cases are applicable as to the appropriate discipline to impose.

39. In his zealousness, the respondent objected to nearly anything and everything he could have and in some cases reiterated many objections for our consideration as well. Our determinations with regard to the clear and convincing proof of each Count of misconduct resolve most, if not all of these objections. However, to the extent they are not resolved by our conclusions, the trial panel's rulings are affirmed.

40. Fred C. Zacharias, *The Professional Discipline of Prosecutors*, 79 N.C. L.Rev. 721, 746 n. 91, provides examples. See, e.g., *Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n v. Ramey*, 512 N.W.2d 569, 572 (Iowa 1994) (en banc) [Prosecutor suspended for three months for, inter alia, failing to disclose interview with informant.]; *In re Carpenter*, 248 Kan. 619, 808 P.2d 1341, 1346 (1991) (per curiam) [Assistant district attorney censured for failure to disclose exculpatory evidence.]; *In re Morris*, 419 N.W.2d 70, 70 (Minn.1987) [Prosecutor censured for failure to disclose evidence.]; *In re Brophy*, 83

A.D.2d 975, 442 N.Y.S.2d 818, 819 (1981) (mem.) [Prosecutor censured for inadvertent Brady violation.]; *Office of Disciplinary Counsel v. Jones*, 66 Ohio St.3d 369, 613 N.E.2d 178, 179–80 (1993) (per curiam) [Prosecutor suspended for six months for failing to disclose evidence.]; *Cuyahoga County Bar Ass'n v. Gerstenslager*, 45 Ohio St.3d 88, 543 N.E.2d 491, 491 (1989) (per curiam) [Prosecutor publicly reprimanded for Brady violation.]; *In re Illuzzi*, 160 Vt. 474, 632 A.2d 346, 347 (1993) (per curiam) [Prosecutor privately reprimanded for failing to disclose exculpatory evidence.]; cf. *Read v. Va. State Bar*, 233 Va. 560, 357 S.E.2d 544, 546–47 (1987) [Commonwealth attorney not disciplined for alleged Brady violation.].

41. Tracey L. Meares, *Rewards for Good Behavior: Influencing Prosecutorial Discretion and Conduct with Financial Incentives*, 64 FORDHAM L. REV. 851, 899 (1995) ["The practical reality is that few prosecutors are ever disciplined by these regulatory entities."]; Steven Alan Reiss, *Prosecutorial Intent in Constitutional Criminal Procedure*, 135 U. PA. L. REV. 1365, 1432 (1987) ["[F]or the most part, ethical guidelines are too general, too infrequently revised, and too rarely refined through actual application to serve as the primary vehicles for delineating the constraints on prosecutorial activity."].

## CONCLUSION

¶ 32 The Bar Association has not established by clear and convincing evidence that the Rules of Professional Conduct were violated by the respondent's actions relating to Count I, regarding the sole witness/victim, Derrick Smith. However, the respondent's abuse of the subpoena process did result in an abuse of the judicial process concerning Count II. The respondent also violated his duty of disclosure as alleged in Count III.

¶ 33 While the respondent's conduct in Count IV may not have been wilful or active concealment, his actions did result in violations of obstructing access to evidence, timely disclosure of evidence, and conduct which was prejudicial to the administration of justice. The respondent stands exonerated of the allegations made against him in Count V. Considering comparative disciplinary matters, the time span of the conduct in relation to the disciplinary proceeding, the respondent's cooperation and lack of prior discipline, we suspend the respondent for 180 days and require him to pay $12,834.00 towards the costs of these proceedings.

### ATTORNEY SUSPENDED 180 DAYS; PARTIAL COSTS IMPOSED.

REIF, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, JJ., concur.

WATT, and TAYLOR, JJ., dissent.

COLBERT, C.J., GURICH, J., not participating.

TAYLOR, J., with whom WATT, J., joins, dissent:

Whether it was "decades ago" or today, no attorney should ever commit the "reprehensible" conduct in death penalty (or any other) litigation as detailed in the Majority Opinion and Trial Panel Report. The actions of the Respondent take us into the dark, unseen, ugly, shocking nightmare vision of a prosecutor who loves victory more than he loves justice. I agree with the recommendation of the Oklahoma Bar Association that the Respondent should be disbarred.