2015 OK 69

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Stephanie Bradley MILLER, Respondent.**

**State of Oklahoma ex rel. Oklahoma Bar Association, Complainant,**

v.

**Pamela Jean Kimbrough, Respondent.**

**SCBD Nos. 6104, 6105.**

Supreme Court of Oklahoma.

Oct. 20, 2015.

Loraine Dillinger Farabow, Debbie Maddox, Katherine M. Ogden, Oklahoma Bar As-

sociation, Oklahoma City, OK, for Complainant.

Gary A. Rife, Rife Walters Stanley & Natarajan, LLP, Oklahoma City, OK, for Respondent Miller.

Dan Murdock, Oklahoma City, OK, for Respondent Kimbrough.

1. Rules Governing Disciplinary Proceedings ("RGDP"), 5 O.S. 2011, ch. 1, app. 1–A. Rule 6, Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal, sets forth the procedures applicable to such proceedings.

2. Rule 3.3. Candor Toward the Tribunal:
(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
(4) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client.
(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.
(c) The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.
(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse."

3. Rule 3.4. Fairness to Opposing Party and Counsel: A lawyer shall not:
(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

## WINCHESTER, J.

¶1 The complainant, Oklahoma Bar Association, brought separate Rule 6 disciplinary proceedings against the respondents, Stephanie Bradley Miller and Pamela Jean Kimbrough.[1] The OBA alleged violations of the Oklahoma Rules of Professional Conduct, including Rules 3.3,[2] 3.4,[3] 3.8(d),[4] 4.1,[5] and 8.4(c)-(d),[6] as well as Rule 1.3[7] of the RGDP.

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;
(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or
(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
(1) the person is a relative or an employee or other agent of a client; and
(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

4. Rule 3.8. Special Responsibilities of a Prosecutor: The prosecutor in a criminal case shall:
...
(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal; ....

5. Rule 4.1. Truthfulness in Statements to Others: In the course of representing a client a lawyer shall not knowingly:
(a) make a false statement of material fact or law to a third person; or
(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

6. Rule 8.4. It is professional misconduct for a lawyer to: ...
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice; ....

The crux of the allegations is that the two respondents while prosecuting a murder trial failed to disclose to the defense inconsistent information taken during an interview of an eyewitness. Essentially, the Bar Association is alleging a violation of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."

¶2 Respondent Miller's hearing began May 5, 2014, and lasted until May 8, 2014. Respondent Kimbrough's hearing began June 18, 2014, and ended the next day. The same panel of the Professional Responsibility Tribunal ("PRT") presided over both hearings. That panel issued two reports, recommending that Respondent Miller receive the disciplinary sanction of public censure. The panel recommended that Respondent Kimbrough receive no form of sanction because the Bar Association had not met its burden of clear and convincing proof of a violation of the Oklahoma Rules of Professional Conduct (ORPC) with regards to her conduct.[8] The matter now comes before this Court for review.

## I. FACTS [9]

¶3 On August 16, 2010, defendant Billy Michael Thompson ("Defendant") stabbed Manuel Sanchez during an altercation over a cigar. Also present were Max McIntyre, David Hudspeth, and Jose Padilla. All of them had been drinking outside Defendant's home in Oklahoma City prior to the incident. Mr. Sanchez died from his injuries.

¶4 The next day, detectives interviewed Mr. Padilla who stated that Defendant started fighting with everyone during an argument over a cigar. Defendant eventually went into his house and returned with a knife. Padilla stated that he did not know "where the actual puncturing" happened, but that it was "somewhere along Stiles [Street]" (the street on which Defendant lived). Other physical and testimonial evidence also placed the site of the stabbing down the street from Defendant's house. Padilla admitted to the police, however, that he did not see everything and was not sure of the details.

¶5 Defendant was charged in *State of Oklahoma v. Billy Michael Thompson,* Oklahoma County District Court Case No. CF–2010–5654, with Murder in the First Degree and two counts of Assault and Battery with a Deadly Weapon. Defendant was represented by the public defender's office. The respondents, Miller and Kimbrough from the Oklahoma County District Attorney's Office, were assigned the prosecution. Respondent Miller was the lead attorney and Respondent Kimbrough was "second chair," assisting Miller, who was trying her first murder case.

¶6 During the preparation stage, Defendant's attorney, Kent Bridge, indicated to Respondent Miller that Defendant might claim that he acted in self-defense on his own property. Bridge argued that Oklahoma's "Stand Your Ground" law would absolve Defendant of any wrongdoing if he had been repelling an attack against himself on his own property. Respondent Miller made a note in the district attorney's (hereinafter "DA") file of her conversation with Bridge. She included in her notes, "Bridge stated that he thought . . . on [Manslaughter I] was fair & this wouldn't even be a crime if the stabbing happened in the Defendant's driveway. [sic]"

¶7 The State's theory of the case was that Defendant, armed with a knife, chased the victim away from Defendant's home and stabbed him in the street, a few houses away.

---

**7.** Rule 1.3. Discipline for Acts Contrary to Prescribed Standards of Conduct: The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

**8.** 5 O.S. 2011, ch. 1, app. 3–A.

**9.** The facts are taken from the Trial Panel Reports filed in Respondent Miller's case on August 5, 2014, and in Respondent Kimbrough's case on August 26, 2014.

This theory was consistent with the physical evidence and witness interviews.

¶ 8 On October 21, 2011, Judge Donald Deason set the matter for jury trial on March 12, 2012. In January, the defense was reassigned to Assistant Public Defender Shea Smith. In the weeks leading up to the Thompson trial, Respondent Kimbrough, an experienced prosecutor, finished a murder trial in which she was the lead attorney. During this time she was also dealing with health issues surrounding her parents, who lived in Lawton, Oklahoma. On January 14th, both respondents conducted the preliminary hearing, during which McIntyre and Hudspeth testified, but Padilla did not.

¶ 9 Padilla had moved since the stabbing occurred and both the State and the Defense had difficulty finding him. As a result, Padilla did not testify at the preliminary hearing. On February 28th, an investigator for the DA located him in a nursing home. Respondent Miller filed the State's Witness and Exhibit List two days later, on March 1, 2012,[10] listing Padilla as a witness and giving his incorrect, former address and contact information. In the Witness and Exhibit List, Respondent Miller indicated that Padilla would testify that he saw Defendant pursue the victim with knives. She did not indicate he would testify where the stabbing occurred.

¶ 10 On March 5th, the two respondents interviewed Padilla at the nursing home. During the meeting, Padilla gave statements that were inconsistent with his earlier statements in the police report, and he recounted events that were chronologically out of order. The notes taken by both respondents record that Padilla stated the victims were stabbed either in a driveway or at the end of a driveway. However, none of those notes indicate that Padilla ever described the stabbing as having occurred specifically in Defendant's driveway, nor did they indicate that the stabbing occurred in the street away from Defendant's house. Respondent Kimbrough's notes did reflect that Padilla re-

called the victim and others "left and went toward 41st toward home."

¶ 11 The notes taken by the respondents were not intended to be complete recitations of Padilla's statements, but after realizing Padilla's story was full of inconsistencies, both Kimbrough and Miller stopped taking notes. He had contradicted himself during the interview multiple times. His memory of the events was vague and unreliable, and he referred back generally to whatever he told the police as being more accurate.

¶ 12 After they stopped taking notes, the respondents tried to clarify Padilla's statements by showing him crime scene photographs taken at Defendant's house and along Stiles Street. Eventually, Padilla affirmed the facts he told the police detectives immediately after the stabbing, which facts were consistent with the State's case.

¶ 13 Following the interview with Padilla, Respondent Kimbrough stated to Respondent Miller, "Well, we're not calling him as a witness." Kimbrough did not think that Padilla would be a witness that the jury would "pay attention to" because of his demeanor, his inability to communicate and his chronologically challenged version of events. They did not discuss whether Padilla had made inconsistent statements that could be considered *Brady* material. Then Kimbrough went home.

¶ 14 After the interview Respondent Miller returned to the district attorney's office and spoke to assistant district attorney Merydith Easter Lusk. Miller was frustrated and stated that the interview did not go well. She stated that Padilla was confused from too much drug or alcohol use ("perma-fried") and was inconsistent. She continued that Padilla thought the murder happened in the driveway. She added that he would not be called as a witness. She also told Lusk that she would provide Padilla's location to defense counsel, but if counsel wanted to know what Padilla would say, counsel would have to go see him.

---

10. Because 2012 was a leap year, February had twenty-nine days. Thus two days passed be-

tween February 28th and March 1st.

¶ 15 On March 7th, the respondents met with defense counsel Smith to view physical evidence of the upcoming trial. Respondent Miller told Smith the correct address of Padilla, that he had been located at a nursing home in Jones, Oklahoma. She also gave Lusk the phone number of the nursing home, and told her that the State would not be calling Padilla as a witness because he was confused and unable to remember much of anything, had taken too many drugs, and was unfit or unable to testify in a coherent way.

¶ 16 Based in part on these references to Padilla's competency, Smith suggested that the parties stipulate to Padilla's testimony. Kimbrough drafted the stipulation, which did not indicate that Padilla had ever stated that the stabbing occurred in a driveway or near the end of a driveway. Rather, it noted that Padilla would have testified that the stabbing happened in the street. It also stated that Padilla was "medically unable to appear to testify" because of his physical condition.

¶ 17 Smith questioned the accuracy of the stipulation. As a result, all three attorneys listened to the detective's tape-recorded interview of Padilla where he stated that the stabbing occurred "somewhere along Stiles [Street]." Smith then approved the stipulation, based in part on the representations of the two respondents. Smith wanted the stipulation because she thought it was important that the jury hear that the witnesses and Defendant were fighting over a cigar. The stipulation also stated that Padilla was "medically unable to appear to testify" because of his physical condition. Although the director of the nursing home expressed concerns about Padilla's medical condition with the DA's investigator, Padilla was able to attend Thompson's second trial after his first trial was vacated by the trial court.

¶ 18 After the meeting with defense counsel, Respondent Miller again spoke with assistant district attorney Lusk. She told Lusk that when defense counsel suggested a stipulation, Miller tried not to seem too eager to agree and tried to hide her excitement since the stipulation, "did nothing but help us." She also told Lusk that they had given defense counsel Padilla's contact information, but that Miller believed defense counsel was too lazy to go out and interview him.

¶ 19 At trial, Judge Deason admitted the stipulation into evidence. It had been signed by Respondent Kimbrough, defense counsel, and Defendant. The judge instructed the jury that it had been approved by the parties and could be accepted as fact. The stipulation specifically stated that Padilla would testify that the stabbing happened "in the street," which was an addition suggested by Respondent Miller. Judge Deason also instructed the jury on the issues of self-defense and the "Stand Your Ground" law.

¶ 20 In closing arguments, Respondent Kimbrough repeatedly referred to the stipulation as proof that the stabbing occurred in the street, not in the driveway as suggested by defense counsel. Respondent Miller made the same argument. Both respondents argued that self defense was not applicable.

¶ 21 Lusk was present in the courtroom during the closing arguments, and she later testified to the Trial Panel that the State argued no evidence suggested the stabbing happened in the driveway. She considered that to be a lie and concluded Respondent Miller never disclosed Padilla's statement about "the driveway" to the defense, and the omission of those statements was being used against Defendant to weaken his claims of self defense.

¶ 22 The jury convicted Defendant of First–Degree Murder and recommended a life sentence. After trial Ms. Lusk spoke with the Respondent Miller regarding the trial and Padilla's statements, and she concluded that Padilla's inconsistent statements had not been disclosed to the defense. When speaking of Padilla, Miller stated, "He's the one in the wheelchair. He's the one who thinks it happened in the driveway." Miller also told Lusk that Padilla had been "made available" to defense counsel, but that the statements about "the driveway" were not disclosed. She further told Lusk that another assistant district attorney, Emily Harrelson, had earlier questioned whether Padilla's statements made to the respondents were exculpatory. Miller had replied that it was maybe "borderline" *Brady* but that Padilla

had been made available to the defense counsel, who could have interviewed him.

¶ 23 Lusk reported the matter to District Attorney David Prater, who then contacted Oklahoma County Public Defender, Bob Ravitz concerning the possible *Brady* violation. The DA initiated an investigation. The investigator contacted Respondent Kimbrough in Lawton at a hospital where her father was admitted for heart problems. On the phone she told him, "the only thing that was a little different then is he [Padilla] said I don't know if it happened in the street or in the driveway and but then that's when I said well if you told the officers in the street was that night, would that be, he said that's more accurate." After the investigation concluded, the DA terminated both respondents from their jobs with the DA's office.

¶ 24 After the DA and Public Defender informed Judge Deason about the investigation and their conclusions, the judge granted Defendant a new trial and vacated the conviction based on the respondents' failure to disclose exculpatory information to the defense. In the second trial, Padilla appeared and testified in court. However, he did not testify that the stabbing occurred in Defendant's driveway. Defendant was convicted of the lesser crime of First–Degree Manslaughter; for which he received a sentence of twenty years in prison.

## II. STANDARD OF REVIEW

¶ 25 Under the Oklahoma State Constitution, the regulation of licensure, ethics, and discipline of legal practitioners is the non-delegable responsibility of this Court. *State ex rel. Oklahoma Bar Ass'n v. McArthur,* 2013 OK 73, ¶ 4, 318 P.3d 1095, 1097. In disciplinary proceedings, therefore, this Court has exclusive original jurisdiction. Rule 1.1, RGDP; *State ex rel. Oklahoma Bar Ass'n v. Garrett,* 2005 OK 91, ¶ 3, 127 P.3d 600, 602. While we generally afford the PRT's decision great weight, "it is ultimately this court's responsibility to make the final determination." *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* 1991 OK 33, ¶ 9, 810 P.2d 826, 830–31.

¶ 26 Before this Court can impose discipline on an attorney, the charges must be proved by clear and convincing evidence, which is "proof which results in reasonable certainty of truth." Rule 6.12, RGDP; *State ex rel. Oklahoma Bar Ass'n v. Miller,* 2013 OK 49, ¶ 10, 309 P.3d 108, 114; Black's Law Dictionary 251 (6th ed.1990) (defining "clear and convincing evidence"). We review such matters *de novo. State ex rel. Oklahoma Bar Ass'n v. Farrant,* 1994 OK 13, ¶ 7, 867 P.2d 1279, 1283–84.

## III. DISCUSSION

¶ 27 Respondents Miller and Kimbrough were heard by one panel, and for Respondent Miller the panel recommended public reprimand and for Respondent Kimbrough the panel recommended dismissal of the complaint. These two complaints revolve around discovery in the underlying criminal case, and subsequent alleged violation of ORPC Rule 3.8(d). A witness, Padilla, gave the respondents conflicting accounts concerning where the attack on the deceased occurred. He used the term "the driveway" without relating which driveway he intended to identify. At the time the respondents interviewed the witness, he told them to refer to whatever he told the police right after the incident. Even though he did not testify during the first trial, he did during the second, but did not testify that the stabbing occurred in Defendant's driveway. Defendant, in the second trial, received a lesser sentence for a lesser crime, but there is no cause to believe that verdict was due to the testimony of Padilla. He did not testify that the attack occurred in Defendant's driveway. His testimony did not appear to be material to the outcome of the case.

¶ 28 However, the evidence reveals that the respondents knew Padilla had contradicted his earlier statement, they knew the defense believed that if the stabbing occurred in the driveway they would have some support for their self-defense argument. They knew Padilla told the respondents that the stabbing occurred in the driveway, even though he did not specify which driveway. The trial panel believed Respondent Miller thought Padilla was talk-

ing about Defendant's driveway, while the panel believed Respondent Kimbrough thought Padilla was referring to a driveway down the street. Being on notice, both should have timely presented this to the defense. The problem was enhanced by the closing argument indicating that Padilla's testimony was consistent with the prosecution's theory of the facts, when in fact they both knew Padilla had contradicted himself. As senior attorney, Respondent Kimbrough should have instructed Respondent Miller that the inconsistency must be revealed.

¶ 29 In the *State ex rel. Oklahoma Bar Ass'n v. Ward*, 2015 OK 48, 353 P.3d 509, in which all Justices concurred, this Court cited with approval, *In re Attorney C*, 47 P.3d 1167, 1173 in its interpretation of Rule 3.8(d):

"[D]iscovery violations in criminal cases are different from other kinds of disciplinary rule violations for a number of reasons. First, discovery issues arise in almost every criminal case. Trial courts routinely make findings of fact and enter orders and sanctions designed to respond to the severity of the violation. As a result, the problems are visible, immediately addressed, and any harm to the public or the individual parties is dealt with in the context of the pending case.... [M]anagement, regulation, and supervision of discovery [is] preeminently a trial court function."

*Ward*, 2015 OK 48, ¶ 33, 353 P.3d at 521.

¶ 30 As this *Thompson* case reveals, discovery violations are handled either in the trial courts, or as in *Ward*, "can be redressed on appeal by the Court of Criminal Appeals within the context of the particular case." *Ward*, 2015 OK 48, ¶ 33, 353 P.3d at 522. We agree the evidence shows that Respondent Miller showed concern that Padilla's interview contained contradictions and that it was "borderline *Brady*." She even admitted to assistant district attorney Lusk that Padilla "was the one who thinks it happened in the driveway."

¶ 31 The conduct of the respondents in the murder trial resulted in dismissal from the DA's office and resulted in negative public attention for the respondents. It also resulted in hearings before the PRT, requiring the respondents to obtain the representation of counsel. As this Court recognized in *Ward*, the Oklahoma Bar properly performs its responsibility by its interest in prosecutorial ethics and protection of the rights of criminal defendants. *Ward*, 2015 OK 48, ¶ 52, 353 P.3d at 528.

¶ 32 This Court performs its duty by examining the record and determining whether any provision in the Oklahoma Rules of Professional Conduct has been violated and what, if any, discipline is appropriate. "[O]ur responsibility is not to punish but to inquire into and gauge a lawyer's continued fitness to practice law, with a view of safeguarding the interest of the public, of the courts, and of the legal profession." *State ex rel. Oklahoma Bar Association v. Layton*, 2014 OK 21, ¶ 33, 324 P.3d 1244, 1259.

¶ 33 The Bar Association recommended that both respondents be publicly censured for their acts. The trial panel concluded that Respondent Miller intentionally misled the defense because she believed the witness was referring to Defendant's driveway when the respondents interviewed him. We agree. The trial panel concluded that Respondent Kimbrough did not believe the witness specifically referred to Defendant's driveway. We agree. Nevertheless, she knew that Padilla's interview with the respondents contained contradictions to the recorded interview Defendant's attorney reviewed. Respondent Kimbrough should have informed the defense of that fact when negotiating the wording of the stipulation. Neither respondent should have allowed or participated in a closing argument that claimed the witness would not contradict the prosecutor's argument concerning the location of the stabbing. This conduct violated Rule 8.4(c) of the Oklahoma Rules of Professional Conduct, which prohibits a lawyer from engaging in conduct involving dishonesty, or misrepresentation. We conclude that the respondents should be and are hereby publicly reprimanded. We order that the costs of the bar proceedings be paid within 90 days of the date this decision becomes final. Respondent Miller is assessed the costs of $9,190.44. Respondent Kimbrough is assessed the costs of $4,634.51.

THE RESPONDENTS STAND PUBLICLY CENSURED AND ORDERED TO PAY THE COSTS OF THIS PROCEEDING.

REIF, C.J., WINCHESTER, EDMONDSON, COLBERT, and GURICH, JJ, concur.

COMBS, V.C.J., (by separate writing) dissents, joined by KAUGER, WATT and TAYLOR, JJ, dissent.

COMBS, V.C.J., with whom KAUGER, WATT, and TAYLOR, JJ., join, dissenting:

¶ 1 Disciplinary action in response to prosecutorial misconduct has evolved over time. In *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Miller*, 2013 OK 49, 309 P.3d 108, this Court suspended a former prosecutor for 180 days due to his actions before, during, and after two murder trials resulting from a drive-by shooting in 1993. The majority noted:

> [h]indsight is 20–20. Instances of prosecutorial misconduct from previous decades, such as withholding evidence, were often met with nothing more than a reprimand or a short suspension.... Make no mistake, if this conduct were to happen today, the punishment would have been much more severe. This is not to say that the Court condones his conduct, merely that we are not inclined to apply the harsher standards of today to conduct that occurred at a time when it was punished lightly, if at all.

*Miller*, 2013 OK 49, ¶ 30, 309 P.3d 108.

¶ 2 The serious nature of Respondents' actions is reflected in the speed with which the trial court and their own superiors reacted to their wrongdoing. Respondents' coworker Lusk informed District Attorney David Prater of her concerns over Respondents' actions on March 16, 2012. After a joint investigation that included the Chief Public Defender of Oklahoma County, Bob Ravitz, both Respondents were terminated from employment with the District Attorney's Office on April 5, 2012. By May 4, 2012, Judge Deason had entered an order for a new trial. As the Complaint notes, Respondents' actions and termination from the District Attorney's Office were widely publicized and reflected poorly upon the integrity of the legal profession and judicial system.

¶ 3 The majority focuses on this Court's recent decision in *State ex rel. Oklahoma Bar Ass'n v. Ward*, 2015 OK 48, 353 P.3d 509, for the proposition that violations of the rules of criminal discovery are best left to the trial court. We qualified that proposition, however, noting "[t]he role of this Court in criminal discovery is limited to those 'cases in which conduct occurs that reflects upon the character of the prosecutor: conduct that cannot be fully addressed by orders relating to the underlying case.'" *Ward*, 2015 OK 48, ¶ 33, 353 P.3d 509 (quoting *In re Attorney C*, 47 P.3d 1167, 1174 (Colo.2002)). Respondents' actions present just such a situation.

¶ 4 It is true this Court's responsibility is not to punish. However, it is our responsibility to gauge a lawyer's continued fitness to practice law, with a view of safeguarding the interest of the public, the courts, and the legal profession. *State ex rel. Oklahoma Bar Ass'n v. Layton*, 2014 OK 21, ¶ 34, 324 P.3d 1244. Turning a blind eye to Respondents' actions betrays those interests and sends a message that this Court is unconcerned by prosecutors who are more concerned with victory than the fair administration of justice. *See Miller*, 2013 OK 49, 309 P.3d 108 (Taylor, J., with whom Watt, J., joins, dissenting) (noting prosecutorial misconduct summons a "nightmare vision of a prosecutor who loves victory more than he loves justice"). Accordingly, I would suspend both Respondents for a period of six months.